(Slip Opinion) OCTOBER TERM, 2019 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SHULAR *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 18–6662.   Argued January 21, 2020 —Decided February 26, 2020

The Armed Career Criminal Act (ACCA) mandates a 15-year minimum sentence for a defendant convicted of being a felon in possession of a firearm who has at least three convictions for "serious drug offense[s]." 18 U. S. C. §924(e)(1). A state offense ranks as a "serious drug offense" only if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." §924(e)(2)(A)(ii).

To determine whether an offender's prior convictions qualify for ACCA enhancement, this Court has used a "categorical approach," looking "only to the statutory definitions of the prior offenses." *Taylor* v. *United States*, 495 U. S. 575, 600.  Under some statutes, a court employing a categorical approach must come up with a "generic" version of a crime—that is, the elements of the offense as commonly understood.  The court then determines whether the elements of the offense of conviction match those of the generic crime.  Other statutes, which ask the court to determine whether the conviction meets some other criterion, require no such generic-offense analysis.

Shular pleaded guilty to being a felon in possession of a firearm and received a 15-year sentence, the mandatory minimum under ACCA. In imposing this sentence, the District Court held that Shular's six prior cocaine-related convictions under Florida law qualified as "serious drug offense[s]" triggering ACCA enhancement.  The Eleventh Circuit affirmed, concluding that §924(e)(2)(A)(ii)'s "serious drug offense" definition does not require a comparison to a generic offense.

*Held*: Section 924(e)(2)(A)(ii)'s "serious drug offense" definition requires only that the state offense involve the conduct specified in the statute; it does not require that the state offense match certain generic offenses.  Pp. 5–11.

Syllabus

(a) The parties agree that §924(e)(2)(A)(ii) requires a categorical approach. They differ, however, on what comparison the statute requires. In the Government's view, §924(e)(2)(A)(ii) identifies conduct a court should compare directly against the state crime's elements. In Shular's view, §924(e)(2)(A)(ii) identifies generic offenses whose elements a court must first expound, then compare against the state crime's elements. Pp. 5–6.

(b) The statutory text and context show that §924(e)(2)(A)(ii) refers to conduct, not offenses. In two respects, §924(e)(2)(A)(ii) contrasts with neighboring §924(e)(2)(B)(ii), which refers to a crime that "is burglary, arson, or extortion" and calls for the generic-offense analysis that Shular urges. First, the terms in §924(e)(2)(A)(ii)— "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance"—can be used to describe conduct. Unlike "burglary," "arson," and "extortion," those terms do not unambiguously name offenses. Second, by speaking of activities a state-law drug offense "involv[es]," §924(e)(2)(A)(ii) suggests that the descriptive terms immediately following the word "involving" identify conduct. To refer to offenses, it would have been far more natural for the drafter to follow §924(e)(2)(B)(ii) in using "is." Pp. 6–7.

(c) Shular argues that Congress meant to capture the drug offenses generally existing in state laws at the time of §924(e)(2)(A)(ii)'s enactment. But he admits that those state laws lacked common nomenclature. The evident solution was for Congress to identify offenses by the conduct involved, not by the name of the offenses. Shular offers no persuasive explanation for why Congress would have chosen "involving" over "is" to refer to offenses. Nor do the other ACCA provisions on which Shular relies shed light on whether §924(e)(2)(A)(ii) refers to conduct or offenses. Pp. 7–9.

(d) Rejecting a generic-offense approach, Shular contends, would subject defendants to ACCA enhancement based on outlier state laws. He emphasizes that the Florida drug offenses of which he was convicted do not require, as an element, knowledge of the illicit nature of the controlled substance. But Shular overstates the extent to which Florida law is idiosyncratic, for if a defendant asserts that he was unaware of the substance's illicit nature, the jury must find knowledge beyond a reasonable doubt. In any event, Shular's interpretation is scarcely the only one that promotes consistency. Congress intended consistent application of ACCA to all offenders who engaged— according to the elements of their prior convictions—in certain conduct. Pp. 9–10.

(e) The rule of lenity has no application here, for after consulting traditional canons of interpretation there remains no ambiguity for the

Syllabus

rule of lenity to resolve.  Pp. 10–11.

736 Fed. Appx. 876, affirmed.

GINSBURG, J., delivered the opinion for a unanimous Court.  KAV-ANAUGH, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–6662

_____

## EDDIE LEE SHULAR, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[February 26, 2020]

JUSTICE GINSBURG delivered the opinion of the Court.

The Armed Career Criminal Act (ACCA), 18 U. S. C. §924(e), mandates a 15-year minimum sentence of imprisonment for certain defendants with prior convictions for a "serious drug offense." A state offense ranks as a "serious drug offense" only if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." §924(e)(2)(A)(ii). This case concerns the methodology courts use to apply that definition.

While the parties agree that a court should look to the state offense's elements, they disagree over what the court should measure those elements against. In the Government's view, the court should ask whether those elements involve the conduct identified in §924(e)(2)(A)(ii)—namely, "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." Petitioner Eddie Lee Shular, however, contends that the terms employed in the statute identify not conduct, but offenses. In his view, those terms are shorthand for the elements of the offenses as commonly understood. According to Shular,

the court must first identify the elements of the "generic" offense, then ask whether the elements of the state offense match those of the generic crime.

Under the approach he advances, Shular argues, his sentence is not subject to ACCA enhancement. The generic offenses named in §924(e)(2)(A)(ii), as Shular understands them, include a *mens rea* element of knowledge that the substance is illicit. He emphasizes that his prior convictions were for state offenses that do not make knowledge of the substance's illegality an element of the offense; the state offenses, he therefore maintains, do not match the generic offenses in §924(e)(2)(A)(ii).

The question presented: Does §924(e)(2)(A)(ii)'s "serious drug offense" definition call for a comparison to a generic offense? We hold it does not. The "serious drug offense" definition requires only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain generic offenses.

I

Ordinarily, a defendant convicted of being a felon in possession of a firearm, in violation of §922(g)(1), faces a maximum sentence of ten years. §924(a)(2). If the offender's prior criminal record includes at least three convictions for "serious drug offense[s]" or "violent felon[ies]," however, ACCA mandates a minimum sentence of 15 years. §924(e)(1).

To determine whether an offender's prior convictions qualify for ACCA enhancement, we have used a "categorical approach," under which we look "only to the statutory definitions of the prior offenses." *Taylor* v. *United States*, 495 U. S. 575, 600 (1990). Under this approach, we consider neither "the particular facts underlying the prior convictions" nor "the label a State assigns to [the] crime[s]." *Mathis* v. *United States*, 579 U. S. ___, ___ (2016) (slip op., at 8) (internal quotation marks and alterations omitted).

So, for example, to apply ACCA's provision defining "violent felony" to include "burglary," §924(e)(2)(B)(ii), we ask only whether the elements of the prior conviction constitute burglary; we do not ask what the person did or whether the offense of conviction was named "burglary."

Under some statutes, using a categorical approach requires the court to come up with a "generic" version of a crime—that is, the elements of "the offense as commonly understood," *id.*, at \_\_\_ (slip op., at 1).[1] We have required that step when the statute refers generally to an offense without specifying its elements. In that situation, the court must define the offense so that it can compare elements, not labels. For example, in *Taylor*, confronted with ACCA's unadorned reference to "burglary," we identified the elements of "generic burglary" based on the "sense in which the term is now used in the criminal codes of most States." 495 U. S., at 598–599; §924(e)(2)(B)(ii). We then inquired whether the elements of the offense of conviction matched those of the generic crime. *Id.*, at 602. See also, *e.g.*, *Esquivel-Quintana* v. *Sessions*, 581 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 4) ("generic federal definition of sexual abuse of a minor" for purposes of 8 U. S. C. §1101(a)(43)(A)).

In contrast, other statutes calling for a categorical approach ask the court to determine not whether the prior conviction was for a certain offense, but whether the conviction meets some other criterion. For example, in *Kawashima* v. *Holder*, 565 U. S. 478 (2012), we applied a categorical approach to a statute assigning immigration consequences to prior convictions for "an offense that . . . involves fraud or deceit" with a loss exceeding $10,000. §1101(a)(43)(M)(i). The quoted language, we held, "mean[s] offenses with elements that necessarily entail fraudulent or

---

[1] We have also used the term "generic crime" to mean the crime "in general" as opposed to "the specific acts in which an offender engaged on a specific occasion." *Nijhawan* v. *Holder*, 557 U. S. 29, 33–34 (2009). That is not the sense in which we use "generic" in this opinion.

deceitful *conduct*." *Id.*, at 484 (emphasis added). Consequently, no identification of generic offense elements was necessary; we simply asked whether the prior convictions before us met that measure. *Id.*, at 483–485. See also, *e.g.*, *Stokeling* v. *United States*, 586 U. S. ___, ___–___ (2019) (slip op., at 12–13) (determining whether an offense "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U. S. C. §924(e)(2)(B)(i)).

This case invites us to decide which of the two categorical methodologies just described applies in determining whether a state offense is a "serious drug offense" under ACCA. ACCA defines that term to include:

> "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U. S. C. [§]802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U. S. C. §924(e)(2)(A)(ii).

## II

Shular pleaded guilty in the United States District Court for the Northern District of Florida to possessing a firearm after having been convicted of a felony, in violation of §922(g)(1), and possessing with intent to distribute cocaine and cocaine base, in violation of 21 U. S. C. §841(a)(1) and (b)(1)(C). The District Court sentenced Shular to imprisonment for 15 years, the mandatory minimum under ACCA, to be followed by three years of supervised release.

In imposing that enhanced sentence, the District Court took account of Shular's prior convictions under Florida law. In 2012, Shular pleaded guilty to five counts of selling cocaine and one count of possessing cocaine with intent to sell, all in violation of Fla. Stat. §893.13(1)(a). That law makes it a crime to "sell, manufacture, or deliver, or possess

with intent to sell, manufacture, or deliver, a controlled substance." *Ibid.* For those offenses, "knowledge of the illicit nature of a controlled substance is not an element," but lack of such knowledge "is an affirmative defense." §893.101(2). Shular's six convictions under that Florida law, the District Court concluded, qualified as "serious drug offense[s]" triggering ACCA enhancement under 18 U. S. C. §924(e)(2)(A)(ii).

The United States Court of Appeals for the Eleventh Circuit affirmed the sentence. 736 Fed. Appx. 876 (2018). It relied on Circuit precedent holding that a court applying §924(e)(2)(A)(ii) "need not search for the elements of 'generic' definitions" of any offense, because the statute "require[s] only that the predicate offense 'involv[e]' . . . certain activities." *United States* v. *Smith*, 775 F. 3d 1262, 1267 (2014).

Courts of Appeals have divided on whether §924(e)(2)(A)(ii)'s "serious drug offense" definition requires a comparison to a generic offense. Compare, *e.g.*, *id.*, at 1267 (no generic-offense comparison), with *United States* v. *Franklin*, 904 F. 3d 793, 800 (CA9 2018) (court must define a generic crime). We granted certiorari to resolve this conflict, 588 U. S. \_\_\_ (2019), and now affirm the Eleventh Circuit's judgment.

## III
### A

The parties here agree that §924(e)(2)(A)(ii) requires a categorical approach. A court must look only to the state offense's elements, not the facts of the case or labels pinned to the state conviction.

They differ, however, on what comparison §924(e)(2)(A)(ii) requires. Shular would require "a generic-offense matching exercise": A court should define the elements of the generic *offenses* identified in §924(e)(2)(A)(ii), then compare those elements to the

elements of the state offense. Brief for Petitioner 13–14. In the Government's view, a court should apply "the *Kawashima* categorical approach": It should ask whether the state offense's elements "necessarily entail one of the types of *conduct*" identified in §924(e)(2)(A)(ii). Brief for United States 13, 20 (emphasis added).

This methodological dispute is occasioned by an interpretive disagreement over §924(e)(2)(A)(ii)'s reference to "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." Those terms, in the Government's view, describe conduct a court can compare directly against the state crime's elements. Shular sees them instead as offenses whose elements a court must first expound.

## B

The Government's reading, we are convinced, correctly interprets the statutory text and context. Two features of §924(e)(2)(A)(ii), compared against a neighboring provision referring to offenses, §924(e)(2)(B)(ii), show that §924(e)(2)(A)(ii) refers to conduct.

First, the terms in §924(e)(2)(A)(ii)—"manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance"—are unlikely names for generic offenses. Those words undoubtedly can be used to describe conduct. But as Shular acknowledges, they are not universal names of offenses; instead, States define "core drug offenses with all manner of terminology, including: trafficking, selling, giving, dispensing, distributing, delivering, promoting, and producing." Reply Brief 7.

Contrast §924(e)(2)(A)(ii) with §924(e)(2)(B)(ii), the enumerated-offense clause of ACCA's "violent felony" definition, appearing in the same section of the Career Criminals Amendment Act of 1986, 100 Stat. 3207–39 to 3207–40. That provision, which refers to a crime that "is burglary, arson, or extortion," requires a generic-offense

analysis. See *Mathis*, 579 U. S., at ___ (slip op., at 2). The terms "burglary," "arson," and "extortion"—given their common-law history and widespread usage—un-ambiguously name offenses. Cf., *e.g.*, *Taylor*, 495 U. S., at 590–599 (discussing "burglary"). Drug offenses, Shular admits, lack "the same heritage and the same established lexicon." Brief for Petitioner 14.

Second, by speaking of activities a state-law drug offense "involv[es]," §924(e)(2)(A)(ii) suggests that the descriptive terms immediately following the word "involving" identify conduct. The parties agree that "involve" means "necessarily requir[e]." Brief for Petitioner 14 (citing Random House Dictionary of the English Language 1005 (2d ed. 1987) ("to include as a necessary circumstance, condition, or consequence")); Brief for United States 21 (same). It is natural to say that an offense "involves" or "requires" certain conduct. *E.g.*, §924(e)(2)(B)(ii) (addressing a crime "involv[ing] conduct that presents a serious potential risk of physical injury to another"); *Mathis*, 579 U. S., at ___ (slip op., at 5) ("The generic offense [of burglary] requires unlawful entry into a building or other structure." (internal quotation marks omitted)).

To refer to offenses as Shular urges, it would have been far more natural for the drafter to follow the enumerated-offense clause in using "is," not "involving." See §924(e)(2)(B)(ii) (crime that "is burglary, arson, or extortion"). There, the word "is" indicates a congruence between "crime" and the terms that follow, terms that are also crimes. See American Heritage Dictionary 114 (def. 7a) (1981) ("To equal in meaning or identity"). Yet Congress did not adopt that formulation in §924(e)(2)(A)(ii), opting instead for language suited to conduct.

C

Shular principally urges that at the time of §924(e)(2)(A)(ii)'s enactment, federal and state criminal

laws widely prohibited the "core conduct" of manufacturing, distributing, and possessing with intent to manufacture or distribute drugs. Brief for Petitioner 10–12. Some laws, Shular observes, used those very terms. See, *e.g.*, 21 U. S. C. §841(a)(1) (1982 ed.). But even if the substance of state drug laws was well established—rather than their nomenclature, which Shular concedes was not—Congress could capture that substance by reference to conduct, rather than offenses.

Shular points out that the word "involving" can accommodate a generic-offense approach. Cf. *Scheidler* v. *National Organization for Women, Inc.*, 537 U. S. 393, 409 (2003) ("act or threat involving . . . extortion," 18 U. S. C. §1961(1), contemplates "'generic' extortion" (some internal quotation marks omitted)). But we have no reason to think Congress intended that approach for §924(e)(2)(A)(ii)— which uses no deeply rooted offense name like "extortion" and contrasts with the offense-oriented language of a neighboring provision.

Endeavoring to explain why Congress might have chosen "involving" over "is" in §924(e)(2)(A)(ii), Shular suggests that variation in state drug-offense terminology required a word more approximate than "is." But if Congress was concerned that state drug offenses lacked clear, universally employed names, the evident solution was to identify them instead by conduct. Using "involving" rather than "is" does not clarify that the terms are names of offenses; quite the opposite. See *supra*, at 7.

Shular asserts that to describe conduct rather than offenses, Congress would have used the language of the elements clause of the "violent felony" definition, which captures a crime that "*has as an element* the use, attempted use, or threatened use of physical force against the person of another." §924(e)(2)(B)(i) (emphasis added). It would have been awkward, however, to describe "possessing with intent to manufacture or distribute"—requiring both

possession and intent—as "an element." Congress may also have wanted to clarify that the state offense need not include the identified conduct as a formal element. Cf. *Kawashima*, 565 U. S., at 483–484 (the statutory phrase "an offense that . . . involves fraud or deceit" "is not limited to offenses that include fraud or deceit as formal elements" but extends to offenses "that necessarily entail fraudulent or deceitful conduct"). Whatever the reason, Congress' choice not to describe each term in §924(e)(2)(A)(ii) as "an element" neither refutes that those terms refer to conduct nor shows that they refer to offenses.

Nor does the other clause of the "serious drug offense" definition shed light on the question before us. Section 924(e)(2)(A)(i) includes as "serious drug offenses" "offense[s] under" specific portions of the U. S. Code.[2] That provision, Shular observes, refers to fully defined crimes. But "the divergent text of the two provisions" of the serious-drug-offense definition, as the Government explains, "makes any divergence in their application unremarkable." Brief for United States 22. Congress' decision to identify federal offenses by reference to the U. S. Code does not speak to whether it identified state offenses by reference to named offenses or conduct.

## D

Shular expresses concern that rejecting a generic-offense approach would yield an anomalous result. Unlike other drug laws, Shular contends, the Florida law under which he was previously convicted does not require that the defendant know the substance is illicit. Unless §924(e)(2)(A)(ii) takes into account all the elements of the

_____

[2] Section 924(e)(2)(A)(i) provides that the term "serious drug offense" includes "an offense under the Controlled Substances Act (21 U. S. C. [§]801 et seq.), the Controlled Substances Import and Export Act (21 U. S. C. [§]951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law."

offense as commonly understood, Shular maintains, defendants would face ACCA enhancement based on outlier state laws.

As an initial matter, Shular overstates Florida's disregard for *mens rea*. Charged under Fla. Stat. §893.13(1)(a), a defendant unaware of the substance's illicit nature can raise that unawareness as an affirmative defense, in which case the standard jury instructions require a finding of knowledge beyond a reasonable doubt. §893.101(2); Fla. Crim. Jury Instr. §25.2 (2020), https:// www.floridasupremecourt.org/content/download/568865/ 6425767/file/EntireDocument.rtf.

In any event, both parties' interpretations of 18 U. S. C. §924(e)(2)(A)(ii) achieve a measure of consistency. Resolving this case requires us to determine which form of consistency Congress intended: application of ACCA to all offenders who engaged in certain conduct or to all who committed certain generic offenses (in either reading, judging only by the elements of their prior convictions). For the reasons explained, we are persuaded that Congress chose the former.

E

Shular urges us to apply the rule of lenity in determining whether §924(e)(2)(A)(ii) requires a generic-offense-matching analysis. The rule "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States* v. *Shabani*, 513 U. S. 10, 17 (1994). Here, we are left with no ambiguity for the rule of lenity to resolve. Section 924(e)(2)(A)(ii)'s text and context leave no doubt that it refers to an offense involving the *conduct* of "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." Because those terms describe conduct and do not name offenses, a court applying §924(e)(2)(A)(ii) need not delineate

the elements of generic offenses.[3]

\*    \*    \*

For the reasons stated, the judgment of the Court of Appeals for the Eleventh Circuit is

*Affirmed.*

---

[3] Shular argues in the alternative that even if §924(e)(2)(A)(ii) does not call for a generic-offense-matching analysis, it requires knowledge of the substance's illicit nature. See Brief for Petitioner 23; Reply Brief 8–10. We do not address that argument. Not only does it fall outside the question presented, Pet. for Cert. i, Shular disclaimed it at the certiorari stage, Supp. Brief for Petitioner 3.

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–6662

_____

## EDDIE LEE SHULAR, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[February 26, 2020]

JUSTICE KAVANAUGH, concurring.

I join the Court's opinion in full. In Part III–E of the opinion, the Court rejects Shular's argument for applying the rule of lenity. I write separately to elaborate on why the rule of lenity does not apply here.

This Court's longstanding precedents establish that the rule of lenity applies when two conditions are met.

*First*, as the Court today says and as the Court has repeatedly held, a court may invoke the rule of lenity only "'after consulting traditional canons of statutory construction.'" *Ante,* at 10 (quoting *United States* v. *Shabani*, 513 U. S. 10, 17 (1994)).[1] In other words, a court must first employ all of the traditional tools of statutory interpretation,

_____

[1] See also, *e.g., Ocasio* v. *United States*, 578 U. S. \_\_\_, \_\_\_, n. 8 (2016) (slip op., at 13, n. 8); *Robers* v. *United States*, 572 U. S. 639, 646 (2014); *Kasten* v. *Saint-Gobain Performance Plastics Corp.*, 563 U. S. 1, 16 (2011); *Abbott* v. *United States*, 562 U. S. 8, 28, n. 9 (2010); *United States* v. *Hayes*, 555 U. S. 415, 429 (2009); *Burgess* v. *United States*, 553 U. S. 124, 135 (2008); *Muscarello* v. *United States*, 524 U. S. 125, 138 (1998); *Caron* v. *United States*, 524 U. S. 308, 316 (1998); *United States* v. *Wells*, 519 U. S. 482, 499 (1997); *Reno* v. *Koray*, 515 U. S. 50, 65 (1995); *Smith* v. *United States*, 508 U. S. 223, 239 (1993); *Gozlon-Peretz* v. *United States*, 498 U. S. 395, 410 (1991); *Moskal* v. *United States*, 498 U. S. 103, 108 (1990); *Callanan* v. *United States*, 364 U. S. 587, 596 (1961). Cf. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843, n. 9 (1984) (instructing courts to employ "traditional tools of statutory construction" before concluding that a statute is ambiguous

and a court may resort to the rule of lenity only "'after seizing everything from which aid can be derived.'" *Ocasio* v. *United States*, 578 U. S. \_\_\_, \_\_\_, n. 8 (2016) (slip op., at 13, n. 8) (quoting *Muscarello* v. *United States*, 524 U. S. 125, 138–139 (1998)). In summarizing the case law, Justice Scalia underscored that the rule of lenity "'comes into operation at the end of the process of construing what Congress has expressed, not at the beginning.'" A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 298 (2012) (quoting *Callanan* v. *United States*, 364 U. S. 587, 596 (1961)). Of course, when "a reviewing court employs all of the traditional tools of construction, the court will almost always reach a conclusion about the best interpretation," thereby resolving any perceived ambiguity. *Kisor* v. *Wilkie*, 588 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 1) (KAVANAUGH, J., concurring in judgment). That explains why the rule of lenity rarely comes into play.

*Second*, this Court has repeatedly explained that the rule of lenity applies only in cases of "'grievous'" ambiguity— where the court, even after applying all of the traditional tools of statutory interpretation, "'can make no more than a guess as to what Congress intended.'" *Ocasio*, 578 U. S., at \_\_\_, n. 8 (slip op., at 13, n. 8) (quoting *Muscarello*, 524 U. S., at 138–139). The Court has stated that the "simple existence of some statutory ambiguity" is "not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." *Id.*, at 138. To be sure, as Justice Scalia rightly noted, the term "'grievous ambiguity'" provides "'little more than atmospherics, since it leaves open the crucial question—almost invariably present—of how much ambiguousness constitutes an ambiguity.'" Reading Law, at 299 (quoting *United States* v. *Hansen*, 772 F. 2d 940, 948 (CADC 1985) (Scalia, J., for the court)); see also Kavanaugh, Fixing Statutory Interpretation, 129 Harv.

————————

and deferring to an agency's reasonable interpretation).

L. Rev. 2118 (2016). That said, atmospherics can matter. Although the Court has not always been perfectly consistent in its formulations, the Court has repeatedly emphasized that a court must find not just ambiguity but "grievous ambiguity" before resorting to the rule of lenity.[2]

To sum up: Under this Court's longstanding precedents, the rule of lenity applies when a court employs all of the traditional tools of statutory interpretation and, after doing so, concludes that the statute still remains grievously ambiguous, meaning that the court can make no more than a guess as to what the statute means.

Because the Court correctly concludes that the rule of lenity does not apply in this case, I join the Court's opinion in full.

—————————

[2] See, *e.g., Shaw* v. *United States*, 580 U. S. ___, ___ (2016) (slip op., at 8); *Salman* v. *United States*, 580 U. S. ___, ___ (2016) (slip op., at 11); *Abramski* v. *United States*, 573 U. S. 169, 188, n. 10 (2014); *Robers*, 572 U. S., at 646; *United States* v. *Castleman*, 572 U. S. 157, 172–173 (2014); *Barber* v. *Thomas*, 560 U. S. 474, 488 (2010); *Dolan* v. *United States*, 560 U. S. 605, 621 (2010); *Dean* v. *United States*, 556 U. S. 568, 577 (2009); *Hayes*, 555 U. S., at 429; *Staples* v. *United States*, 511 U. S. 600, 619, n. 17 (1994); *Chapman* v. *United States*, 500 U. S. 453, 463 (1991); *Huddleston* v. *United States*, 415 U. S. 814, 831 (1974).