**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

IAN DONTE BRIDGES,

    Defendant - Appellant.

No. 19-6133
(D.C. No. 5:18-CR-00288-G-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

Ian Bridges pleaded guilty to being a felon in possession of a firearm and agreed that he qualified for a fifteen-year mandatory minimum sentence under the Armed Career Criminal Act. Bridges requested that the district court sentence him to the statutory mandatory minimum, and the district court did so. Even though he received the sentence that he asked for, Bridges now appeals. Because Bridges's guilty plea is legally valid, and because he invited any sentencing errors, we affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

## I. Ian Bridges, a Convicted Felon, Shoots Four People and Pleads Guilty to Being a Felon in Possession of a Firearm.

Distressed about his son's[1] accidental, self-inflicted gunshot wound to the hand, Jacob Montez and two other men decided that the hand injury needed avenging and that the owner of the gun was to blame. So on September 2, 2018, the three men broke into the home of Bridges, the owner of the gun, and physically assaulted him. Bridges was armed with a Glock Model 31, .357 caliber, semi-automatic pistol at the time, and he stood his ground, shooting all three assailants. Bridges killed one assailant and severely wounded Montez and the third assailant. His gunfire also hit, but did not seriously harm, a woman who happened to be in the residence. After the smoke cleared, Bridges—aware that he was a convicted felon and legally prohibited from possessing a firearm—fled to American Indian trust land[2] and buried his pistol in the sand.

The next day, agents from the Bureau of Indian Affairs arrested Bridges "on an unrelated warrant." R. vol. 2 at 4. Special Agent Michael Ware then contacted Special Agent Trevor Ridgeway of the Oklahoma State Bureau of Investigation "to obtain further information," and Special Agent Ridgeway told Special Agent Ware

---

[1] The record does not provide the son's age.

[2] In the record, this location is referred to as the "Indian Trust Land." R. vol. 1 at 9; *id.* vol. 2 at 4.

about the shooting and that he believed the assailants had assaulted Bridges "as retaliation[.]" R. vol. 1 at 9.

Soon after that, Special Agent Ridgeway interviewed Bridges after he waived his *Miranda* rights. Bridges admitted to possessing the pistol, shooting the assailants and the woman, and stashing the pistol on the trust land. Attempting to fully cooperate, Bridges volunteered to show where the pistol was located. Special Agent Ridgeway agreed, and Bridges led law-enforcement officers from the Bureau of Indian Affairs and the Oklahoma State Bureau of Investigation to the buried pistol.

On November 13, 2018, a federal grand jury indicted Bridges for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Even without a written plea agreement, Bridges continued to cooperate, filing in the district court a petition to enter a guilty plea. Bridges signed his petition "under penalty of perjury" while "in the presence of [his] attorney[.]" R. vol. 1 at 29.

On January 2, 2019, the district court held a change-of-plea hearing. "Knowing all the rights that [he] ha[d] and would be waiving and fully understanding the charges against [him] and the potential range of punishment," Bridges told the court that he still wished to plead guilty. R. vol. 3 at 13:10–14.

## II.    The Presentence Investigation Report

On June 28, 2019, a United States Probation Officer completed Bridges's Presentence Investigation Report (PSR). The probation officer concluded that Bridges's advisory sentencing guidelines range was 188 to 235 months' imprisonment.

3

To get there, the probation officer first reasoned that Bridges should be sentenced as though he had committed voluntary manslaughter, a conclusion that resulted in a base-offense level of twenty-nine. *See* U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1(c)(1)(B) (U.S. Sentencing Comm'n 2018) (requiring a cross-reference calculation to "the most analogous offense guideline" when "the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense" and "death resulted"); *id.* § 2A1.3 (stating that the base-offense level for voluntary manslaughter is twenty-nine). Second, the probation officer noted that Bridges had, before this incident, been convicted for "[1] Assault and Battery with a Deadly Weapon, [2] Burglary in the First Degree, and [3] two separate [Oklahoma] convictions for Distribution of a Controlled Substance," meaning that Bridges qualified for a sentencing enhancement as an armed-career criminal. *See* 18 U.S.C. § 924(e)(1) (providing a fifteen-year mandatory minimum sentence for § 922(g)(1) defendants who have at least three violent felonies or serious drug offenses, or a mixture of both). In light of these convictions, the probation officer recommended a five-level enhancement because Bridges was an armed-career criminal and had used the semi-automatic pistol to commit voluntary manslaughter, raising his base-offense level to thirty-four. *See* U.S.S.G. § 4B1.4(a), (b)(3)(A) (noting that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)" receives an offense level of "34, if the defendant used or possessed the firearm or ammunition in connection with . . . a crime of violence," among other things). Third,

4

the probation officer recommended that Bridges receive a three-level reduction for his timely acceptance of responsibility. *See id.* § 3E1.1(a), (b). Fourth, the probation officer calculated that Bridges had eighteen criminal-history points, placing him in criminal-history category VI. U.S.S.G. Ch. 5, Pt. A, Sentencing Table. And with a criminal-history category of VI and a total-offense level of thirty-one, the probation officer calculated that Bridges's advisory guidelines range was 188 to 235 months' imprisonment.

## III.    Bridges's Sentencing Memorandum and Sentencing Hearing

After reviewing the PSR, Bridges filed a sentencing memorandum raising one objection: he should not be sentenced as though he committed voluntary manslaughter, because he had shot the intruders in self-defense. Thus, he argued, the U.S.S.G. § 2K2.1(c)(1)(B) cross-reference was inapplicable, meaning that his total-offense level was thirty and the proper guidelines range should be 168 to 210 months' imprisonment. *See* U.S.S.G. § 4B1.4(b)(3)(B) (stating that an armed-career criminal's offense level is "otherwise" thirty-three and allowing acceptance-of-responsibility adjustments). In a sentencing memorandum, Bridges requested that the district court sentence him to "the mandatory minimum sentence of 15 years imprisonment followed by a term of supervised release." R. vol. 1 at 33.

At Bridges's sentencing hearing, the government stated that it did not oppose Bridges's objection. Thus, the parties stipulated that Bridges's initial advisory guidelines range was 168 to 210 months' imprisonment. But with a penalty under 18 U.S.C. § 924(e)(1), Bridges had a fifteen-year mandatory minimum, so the parties

5

correctly stipulated that the low end of his advisory guidelines range must increase from 168 months to 180 months. *See* U.S.S.G. § 5G1.1(c)(2) (noting that a sentence cannot be "less than any statutorily required minimum sentence"). Bridges's counsel acknowledged that the court could not go lower than the mandatory minimum sentence: "Judge, we can't get below the 180 months." R. vol. 3 at 21:20–24. The government argued for a 210-month sentence in view of "Mr. Bridges' criminal history" and the "four people [who] were shot here." *Id.* at 22:17–23:22.

The district court "carefully considered [the 18 U.S.C. § 3553] statutory factors" and concluded "that the sentencing enhancement called for by the 15-year mandatory minimum sentence requirement under the statute is an appropriate punishment in this case." *Id.* at 27:12–28:5. In addition to Bridges's 180-month sentence, the court ordered that Bridges serve three years' supervised release. Bridges now appeals, and we have appellate jurisdiction to consider his direct appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## DISCUSSION

### I.     The *Anders* Standard of Review

After filing a notice of appeal, his counsel has advised us that no nonfrivolous bases exist to challenge either Bridges's conviction or his sentence. As a result, Bridges's appellate counsel—who was also his trial counsel—has filed a brief under *Anders v. California*, 386 U.S. 738 (1967), seeking to withdraw as counsel of record. We have described the *Anders*-withdrawal process like this:

6

> Under *Anders,* counsel must submit a brief to the client and the
> appellate court indicating any potential appealable issues based on the
> record. The client may then choose to submit arguments to the
> court. The Court must then conduct a full examination of the record to
> determine whether defendant's claims are wholly frivolous. If the court
> concludes after such an examination that the appeal is frivolous, it may
> grant counsel's motion to withdraw and may dismiss the appeal.

*United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005) (citing *Anders*, 386

U.S. at 744).

Here, neither Bridges nor the government has responded to counsel's *Anders*

brief. As a result, we review counsel's *Anders* brief and the record de novo to

determine whether Bridges's appeal is wholly frivolous. *United States v. Kurtz*, 819

F.3d 1230, 1233 (10th Cir. 2016) (citing *United States v. Leon*, 476 F.3d 829, 832

(10th Cir. 2007) (per curiam)).

## II.    Bridges's Appeal Is Wholly Frivolous.

As discussed, Bridges has declined to file a brief explaining the bases for this

appeal. Thus, we will assume that Bridges is challenging both his conviction and his

sentence. First, we will discuss whether the district court properly accepted Bridges's

guilty plea. Second, we will examine whether Bridges may challenge his sentence's

reasonableness despite his having endorsed the sentence in the district court.

### A.    Bridges's Guilty Plea

The Supreme Court has instructed that "[t]he longstanding test for determining

the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant.'" *Hill v.*

*Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31,

7

(1970)) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962)). For a defendant's guilty plea to be voluntary, the defendant must have made his or her decision freely—it cannot have been "induced by promises or threats which deprive it of the character of a voluntary act[.]" *Machibroda*, 368 U.S. at 493; *see also Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002) ("[A] plea may be involuntary if counsel informs the defendant that he has no choice, he must plead guilty." (citation omitted)). For a defendant's guilty plea to be intelligent, the defendant must have had "a full understanding of what the plea connotes and of its consequence." *United States v. Vidal*, 561 F.3d 1113, 1119 (10th Cir. 2009) (internal quotation marks omitted) (quoting *Gonzales v. Tafoya*, 515 F.3d 1097, 1118 (10th Cir. 2008)). A guilty plea is made intelligently even if the defendant does not understand "every collateral consequence," so long as the defendant appreciates "its direct consequences." *United States v. Hurlich*, 293 F.3d 1223, 1230–31 (10th Cir. 2002) (citing *Wall v. United States*, 500 F.2d 38, 39 (10th Cir. 1974) (per curiam)).

Counsel asserts that "Mr. Bridges' Petition to Enter Plea of Guilty evidences a complete understanding of rights, consequences and waivers." *Anders* Br. 6. We agree. Among other things, Bridges acknowledged in his petition that he was satisfied with his attorney, that he wished to waive his constitutional right (and associated rights) to a jury trial, that he understood the possible sentencing consequences that he would face by pleading guilty, that his plea was voluntary, and that he was in fact guilty of the crime charged in the Indictment. At the change-of-

8

plea hearing, Bridges reaffirmed these affirmations, stated that he desired to plead guilty, and confirmed that he understood the possible penalties of doing so. We thus conclude that Bridges's guilty plea was voluntary and intelligent.

### B. Bridges's Sentence

#### 1. Bridges invited any sentencing errors.

Courts must ensure that the sentences they impose are reasonable. When reviewing a sentence for reasonableness, we generally apply "an abuse-of-discretion standard." *Peugh v. United States*, 569 U.S. 530, 537 (2013) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Booker*, 543 U.S. 220, 261–64 (2005)). But if "the defendant affirmatively endorses the appropriateness of the length of the sentence before the district court," any abuse of discretion the court committed by adhering to the defendant's endorsement was invited by the defendant. *United States v. Mancera-Perez*, 505 F.3d 1054, 1059 (10th Cir. 2007). For this reason, under the invited-error doctrine, we decline to consider on appeal a reasonableness challenge to a sentence requested by the defendant. *Id.* at 1057 n.3 (noting that it would be "unjust and a perversion of the integrity and proper administration of justice to allow a defendant affirmatively to support the reasonableness of his sentence before the district court and then to challenge the reasonableness of that sentence on appeal"); *see also United States v. Chacon*, 800 F. App'x 638, 641 (10th Cir. 2020) (unpublished) (concluding that the defendant had waived a substantive-reasonableness challenge to his sentence "because [he] received the sentence he requested" (citation omitted)); *United States v. Wills*, 796 F. App'x

525, 528–29 (10th Cir. 2019) (unpublished) (explaining that the invited-error doctrine rendered frivolous "any challenge" to a sentence that the defendant "specifically asked for"); *United States v. Chrisman*, 336 F. App'x 821, 823 (10th Cir. 2009) (unpublished) ("Finally, [the defendant] received the sentence he requested . . . . For [the defendant] to now argue that the district court's sentencing was procedurally unreasonable smacks of invited error." (citation omitted)).

Here, Bridges filed a sentencing memorandum requesting a 180-month prison sentence and five years' supervised release: "The purpose of this sentencing memorandum is to demonstrate that the minimum mandatory sentence of 15 years imprisonment followed by a [five-year] term of supervised release, is supported by appropriate sentencing factors, based on appropriate application of the law to the facts, is procedurally sound and substantively reasonable." R. vol. 1 at 31; *see also id.* at 32 (same); *id.* at 33 (same). At his change-of-plea hearing, Bridges's counsel stated that 180 months was the minimum sentencing term available and that such a sentence would be appropriate. R. vol. 3 at 21:23–24 ("Judge, we can't get below the 180 months."); *see also id.* at 25:10–12.

The district court granted Bridges's request, sentencing him to 180 months' imprisonment. And the three-year supervised-release term the court imposed was more lenient than the five-year term that he affirmed was reasonable. Given that the district court gave Bridges a more favorable sentence than the one that he endorsed as

10

reasonable, any sentencing error was invited by Bridges.[3] Thus, Bridges has waived

any appellate challenge to the reasonableness of his sentence.

### 2. *Shular v. United States*, 140 S. Ct. 779 (2020)

Even though we have ruled that Bridges has waived any appellate challenge

that his sentence was unreasonable, we will address one final sentencing issue. From

correspondence Bridges has sent to this court, it appears that if Bridges had raised an

argument on appeal, he would have argued that the district court improperly applied

§ 924(e)(1)'s fifteen-year mandatory minimum. It seems as though Bridges would

have argued that his Oklahoma drug-distribution convictions did not qualify as

"serious drug offenses." In a February 20, 2020 letter, Bridges asked this court to

stay his appeal pending the outcome of the Supreme Court's decision in *Shular v.

United States*, 140 S. Ct. 779 (2020), which the Court decided six days later.

In *Shular*, the Court examined how courts should apply 18 U.S.C.

§ 924(e)(2)(A)(ii)'s "serious drug offense" definition when determining if a

defendant qualifies for the fifteen-year mandatory minimum under § 924(e)(1).

---

[3] Even if the invited-error doctrine did not apply, we would still affirm
Bridges's sentence. Our de novo review of the record reveals no procedural errors.
*See United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (providing
examples of possible procedural errors (citation omitted)). And nothing in the record
demonstrates that Bridges's mandatory-minimum sentence—which was at the bottom
of the guidelines range—is substantively unreasonable. *See, e.g.*, *United States v.
Grijalva*, 800 F. App'x 632, 637 (10th Cir. 2020) (unpublished) (concluding that a
120-month mandatory minimum sentence "was substantively reasonable as a matter
of law" (citation omitted)); *United States v. Ibanez*, 893 F.3d 1218, 1219 (10th Cir.
2018) ("[W]e presume that the sentence was reasonable if it fell within the applicable
guideline range." (citation omitted)).

140 S. Ct. at 782. Under § 924(e)(2)(A)(ii), a "serious drug offense" is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" Shular argued that the behavior described in § 924(e)(2)(A)(ii)—that is, "manufacturing, distributing, or possessing"—were *offenses*, not *conduct*. *Shular*, 140 S. Ct. at 784. He argued that when applying § 924(e)(2)(A)(ii), "[a] court should define the elements of the generic *offenses* identified in § 924(e)(2)(A)(ii), then compare those elements to the elements of the state offense." *Id.* This was significant, Shular argued, because he asserted that those generic offenses "include a *mens rea* element of knowledge that the substance is illicit." *Id.* at 782.

The Court rejected Shular's argument: "Section 924(e)(2)(A)(ii)'s text and context leave no doubt that it refers to an offense involving the *conduct* of 'manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance.'" *Id.* at 787. Hence, in the wake of *Shular*, courts must compare only the elements of the state-law offense to § 924(e)(2)(A)(ii)'s conduct. *United States v. Godinez*, 955 F.3d 651, 657 (7th Cir. 2020) ("*Shular* makes clear that we must determine whether the . . . state law offense meets § 924(e)(2)(A)(ii)'s definition of a 'serious drug offense' by comparing the elements of the [state] statute to the *conduct* described in the [Armed Career Criminal Act]."). And as a result, this means that *Shular* foreclosed any argument that Bridges might have raised that

12

§ 924(e)(2)(A)(ii) required the district court to compare the state-law elements of his distribution convictions to the elements of some generic offense.

Here, the PSR noted that Bridges's criminal history included "two separate convictions for Distribution of a Controlled Substance," resulting from two separate 2002 incidents in which he "distributed cocaine to a confidential source[.]" R. vol. 2 at 5, 8–9. Bridges was convicted in Oklahoma state court. And under Oklahoma law, it is unlawful "[t]o distribute . . . a controlled dangerous substance[.]"[4] Okla. Stat. Ann. tit. 63, § 2-401(A)(1) (West 2002). Because cocaine was and is a Schedule II narcotic drug under Oklahoma law, it qualifies as a "controlled dangerous substance." *Id.* § 2-101(8), (26) (West 2002); *id.* § 2-206(a)(4) (West 2002); *id.* § 2-206(a)(4) (West 2020). Under the 2002 statute, a person convicted for distributing a Schedule II narcotic drug could "be sentenced to a term of imprisonment for not less than five (5) years nor more than life[.]" *Id.* § 2-401(B)(1).

_____

[4] Though the PSR stated that Bridges had been convicted for "Distribution of a Controlled Substance" rather than a "controlled dangerous substance," R. vol. 2 at 5, we presume that Bridges was convicted for distributing a controlled dangerous substance. This is because neither the 2002 nor 2020 Oklahoma statutes provide a definition for a "controlled substance." *See* Okla. Stat. Ann. tit. 63, § 2-101 (West 2002); *id.* § 2-101 (West 2020). Nor did section 2-401(A)(1) create a standalone crime for distributing a "controlled substance." *See id.* § 2-401 (West 2002) (criminalizing distribution of a "controlled dangerous substance," a "counterfeit controlled dangerous substance," an "imitation controlled substance," and a "synthetic controlled substance"). On the other hand, both statutes define the term "controlled dangerous substance." And because cocaine is a controlled dangerous substance and Oklahoma law criminalizes distributing a controlled dangerous substance, we assume, and nothing in the record refutes, that Bridges was convicted for distributing a "controlled dangerous substance."

13

Thus, the "distribution" conduct under section 2-401(A)(1) matches the distribution conduct described in 18 U.S.C. § 924(e)(2)(A)(ii)'s definition of a "serious drug offense." Moreover, the possibility of a life sentence under section 2-401(B)(1) satisfies § 924(e)(2)(A)(ii)'s requirement that the state-law offense carry "a maximum term of imprisonment of ten years or more[.]" Accordingly, we conclude that the district court correctly ruled that Bridges's past Oklahoma convictions for distributing cocaine are "serious drug offenses" and that § 924(e)(1)'s fifteen-year mandatory minimum applies. *See United States v. Coleman*, 656 F.3d 1089, 1090 (10th Cir. 2011) ("A 'serious drug offense' includes a state law offense involving the distribution of a controlled substance where 'a maximum term of imprisonment of ten years or more is prescribed by law.'" (quoting § 922(e)(2)(A)(ii))).

## CONCLUSION

We grant appellate counsel's motion to withdraw, deny as moot Bridges's motion to stay his appeal, and dismiss this case.

Entered for the Court

Gregory A. Phillips
Circuit Judge