[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11458
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cr-00066-MW-CAS-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARRELL HUNTER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 14, 2020)


Before JORDAN, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

Marrell Hunter ("Hunter") appeals his 180-months sentence for being a felon in possession of a firearm. On appeal, Hunter argues that he was not subject to a base offense level increase and other sentencing enhancements because his prior felony convictions under Florida Statute § 893.13(1)(a) are neither "serious drug offenses" under the Armed Career Criminal Act ("ACCA") nor "controlled substance offenses" under the U.S. Sentencing Guidelines. Because United States Supreme Court and Eleventh Circuit precedents foreclose Hunter's arguments, we affirm his sentence.

## I.    FACTUAL AND PROCEDURAL HISTORY

On November 6, 2018, a grand jury returned a one-count indictment, which alleged that Hunter "knowingly possess[ed] a firearm in and affecting interstate commerce" in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The indictment referenced six of Hunter's prior felony convictions. Of relevance here, the indictment stated that Hunter was convicted—twice—in Florida for the sale or delivery of a controlled substance. Hunter accepted a plea agreement and pleaded guilty to the charge in the indictment.

After the district court accepted Hunter's guilty plea, a probation officer prepared Hunter's presentence investigation report. Under U.S. Sentencing Guidelines § 2K2.1, a defendant who previously committed "at least two felony convictions of . . . a *controlled substance offense*" receives a base offense level of

2

twenty-four.  U.S.S.G. § 2K2.1(a)(2) (emphasis added).  The Sentencing Guidelines define a "controlled substance offense" as a state or federal law offense, "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b).  The probation officer determined that Hunter's two convictions under Florida Statute § 893.13(1)(a) for the sale or delivery of a controlled substance (cocaine or crack cocaine) warranted a base offense level of twenty-four.  *See* Fla. Stat. § 893.13(1)(a)(1) (stating that it is a second-degree felony to "sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance" described in Florida Statute § 893.03(2)(a)); *id.* § 893.03(2)(a) (listing cocaine and any of its derivatives); *id.* § 775.082(3)(d) (stating that a term of imprisonment for a second-degree felony is a term not exceeding fifteen years).

The probation officer then enhanced Hunter's offense level to thirty-three after determining that Hunter qualified as an armed career criminal under the ACCA.  Under the ACCA, an armed career criminal is a defendant who has violated 18 U.S.C. § 922(g) and has previously committed three "violent felon[ies] or *serious drug offense*[*s*]."  *See* 18 U.S.C. § 924(e)(1) (emphasis added).  The ACCA defines "serious drug offense" as "an offense under State law, involving manufacturing,

3

distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii). Relevant to this appeal, Hunter's convictions under state law for the sale or delivery of controlled substances served as two of the three predicate offenses for this enhancement.

After raising Hunter's offense level to thirty-three, the probation officer noted a three-level reduction for acceptance of responsibility, resulting in a total offense level of thirty. With a criminal history category of VI and a total offense level of thirty, Hunter would have received a guideline range of 168 to 210 months of imprisonment. U.S.S.G. Sentencing Table, ch. 5, pt. A. However, as an armed career criminal, Hunter faced a mandatory minimum sentence of fifteen years imprisonment and an adjusted guideline range of 180 to 210 months of imprisonment. *See* 18 U.S.C. § 924(e)(1).

Hunter objected to the presentence investigation report and argued that he should not be subjected to the offense level enhancement and fifteen-year mandatory minimum sentence. Specifically, he contended that a violation of Florida Statute § 893.13(1)(a) was neither a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii) nor a "controlled substance offense" under Sentencing Guidelines § 4B1.2(b). Hunter argued that the district court should adopt the categorical approach utilized by the Ninth Circuit in *United States v. Franklin*, 904 F.3d 793 (9th Cir. 2018),

4

*abrogated by Shular v. United States*, 140 S. Ct. 779 (2020), under which the elements of a state criminal offense—here, the elements of Florida Statute § 893.13(1)(a)—should be compared to elements of "generic" or "commonly understood" definitions of a "serious drug offense" and "controlled substance offense." *See Franklin*, 904 F.3d at 796–97. Hunter argued that because Florida Statute § 893.13(1)(a) does "not contain a *mens rea* element," while "generic" definitions of "serious drug offense" and "controlled substance offense" do, his "Florida crimes are broader than the generic drug analogues." Therefore, Hunter contended, his Florida convictions cannot serve as the bases for his offense level enhancement and mandatory minimum sentence.

Before the district court, Hunter acknowledged that his arguments were foreclosed by *United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014). In *Smith,* we rejected the generic-offense analysis Hunter advocated and instead determined that the definitions of "serious drug offense" and "controlled substance offense" in § 924(e)(2)(A) and U.S. Sentencing Guidelines § 4B1.2(b) should be compared to the state offense. 775 F.3d at 1267. As a result, we held that a conviction under Florida Statute § 893.13(1) is a "serious drug offense" under § 924(e)(2)(A) and a "controlled substance offense" under Sentencing Guidelines § 4B1.2(b). 775 F.3d at 1268.

5

At the sentencing hearing, the district court noted that the court was bound to follow Eleventh Circuit precedent, overruled Hunter's objections and found that Hunter's "two sales [were] qualifying offenses consistent with well-established case law in this circuit." The district court sentenced Hunter to 180-months of imprisonment. This timely appeal followed.

## II.    STANDARD OF REVIEW

"We review de novo whether a conviction qualifies as a serious drug offense under the ACCA." *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).

## III.    ANALYSIS

In his initial brief, Hunter argued that we should adopt the generic-offense analysis used in *Franklin* and that, because his convictions under Florida Statute § 893.13(a)(1) did not require a *mens rea* element, they do not qualify as generic drug offenses. Hunter acknowledged that *Smith*, as binding precedent, controlled the outcome of his appeal but raised the issue to preserve his arguments for *en banc* or Supreme Court review. After filing his initial brief, Hunter filed a motion asking this Court to stay briefing pending the United States Supreme Court's decision in *Shular v. United States*, 140 S. Ct. 779 (2020), which this Court granted.

On February 26, 2020, the Supreme Court issued its decision in *Shular v. United States*, 140 S. Ct. 779 (2020). In *Shular*, the Court affirmed our judgment in *United States v. Shular*, 736 F. App'x 876 (11th Cir. 2018), where we had reaffirmed

that *Smith* is binding precedent and that a violation of Florida Statute § 893.13(1)(a) is a "serious drug offense" under § 924(e)(2)(A)(ii). 736 F. App'x at 877. In *Shular*, the Supreme Court resolved the question of whether "§ 924(e)(2)(A)(ii)'s 'serious drug offense' definition call[ed] for a comparison to a generic offense." 140 S. Ct. at 782. Based on the text and structure of § 924(e)(2), the Court held that "it does not. The 'serious drug offense' definition requires only that the state offense involve the *conduct* specified in the federal statute; it does not require that the state offense match certain generic offenses." *Id.* (emphasis added). Specifically, the Supreme Court noted that "the terms in § 924(e)(2)(A)(ii)—'manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance'—are unlikely names for generic offenses," and compared those terms to the language used in other provisions of the ACCA that require a generic-offense analysis. *Id.* at 785 (quoting § 924(e)(2)(A)(ii)). Second, the Supreme Court explained that "by speaking of activities a state-law offense 'involv[es],' § 942(e)(2)(A)(ii) suggests that the descriptive terms immediately following the word 'involving' identify conduct," rather than enumerating offenses. *Id.* (quoting § 924(e)(2)(A)(ii)).

Following the Supreme Court's decision in *Shular*, the government filed its response brief and Hunter filed his reply brief. Regarding the ACCA's "serious drug offense" sentence enhancement, Hunter argued in his reply brief that *Shular* nonetheless requires reversal of his sentence because *Shular* adopted a narrower test

than the one articulated in *Smith* and thereby abrogated that decision.  Specifically, Hunter argued that *Shular*'s analysis would not permit sentence enhancement under the ACCA for a prior conviction under Florida Statute § 893.13(1) because Florida law permits conviction for the attempted sale or delivery of a controlled substance while the ACCA's definition of "serious drug offense" requires actual distribution.  Thus, according to Hunter, because *Smith* permits enhancement under the ACCA for a violation of Florida Statute § 893.13(1) while *Shular*'s analysis does not, *Smith* has been abrogated and his sentence must be reversed.

For similar reasons, Hunter argued in his reply brief that Florida Statute § 893.13(1)(a) is not a "controlled substance offense" under the Sentencing Guidelines.  Hunter also argued that the use of the word "prohibits" in Sentencing Guideline § 4B1.2(b), as opposed to the word "involving" in § 942(e)(2)(a)(ii), means that the Sentencing Guidelines' definition of "controlled substance offense" requires an offense-based approach, rather than the conduct-based approach *Shular* requires for the ACCA's definition of "serious drug offense."

We conclude that *Shular* and *Smith* require affirmance of the district court's sentence.  First, to the extent Hunter maintains the generic-offense/*mens rea* argument raised in his initial brief, *Shular* expressly forecloses that argument, as it relates to whether a conviction under Florida Statute § 893.13(1)(a) constitutes a "serious drug offense" pursuant to § 942(e)(2)(A)(ii).  140 S. Ct. at 784.  Second,

8

we disagree that *Smith* no longer binds panels in this Circuit. To constitute an overruling of a panel precedent, a Supreme Court decision must be clearly on point and must "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). *Shular* did not address the question of whether a conviction under Florida Statute § 893.13(1)(a) constitutes a "controlled substance offense" pursuant to Sentencing Guidelines § 4B1.2(b). Nor did it require an offense-based approach to provisions like Sentencing Guidelines § 4B1.2(b) that are analogous to § 942(e)(2)(A)(ii) but do not use the word "involving" to reference the covered conduct. Finally, *Shular* did not address the question of whether Florida Statute § 893.13(1)(a) permits convictions based on attempted conduct and, if so, whether a conviction under that statute constitutes a "controlled substance offense" or "serious drug offense" under the Sentencing Guidelines and the ACCA, respectively. Moreover, even assuming for argument's sake that *Shular* adopted a narrower legal test than *Smith*, *Shular*'s substantive holding—that a court applying § 942(e)(2)(A)(ii) need not delineate the elements of a generic offense—appears consistent with and supports our decision in *Smith*.[1]

---

[1] *Shular*, *Smith*, and this case all involve a prior felony conviction under the same provision of Florida law, and *Shular* affirmed our judgment that applied *Smith*. Following *Shular*, we have found *Smith* to still be binding precedent in two unpublished decisions. *See United States v. Campbell*, No. 18-14205, 2020 WL 2988847 (11th Cir. June 4, 2020) (unpublished); *United States v. Miller*, 806 F. App'x 963 (11th Cir. 2020) (unpublished).

Thus, until the Supreme Court or this Court *en banc* overrules *Smith*, *Smith* remains binding precedent in this Circuit, and we must apply it to this case. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (describing the prior precedent rule). Under *Smith*, Florida Statute § 893.13(1) is both a "serious drug offense" under § 924(e)(2)(A) and a "controlled substance offense" under Sentencing Guidelines § 4B1.2(b). *See* 775 F.3d at 1268. Because *Smith* remains binding precedent, the district court did not err in sentencing Hunter.

## IV.    CONCLUSION

For the foregoing reasons, we affirm Hunter's sentence.

**AFFIRMED.**