In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-2385

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

THOMAS P. THAYER,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 20-cr-88 — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED MARCH 29, 2022 — DECIDED JULY 21, 2022

———————————

Before FLAUM, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Appellant Thomas Thayer pled guilty to fourth-degree criminal sexual conduct under Minnesota law for groping his 14-year-old daughter while she slept. When Thayer later moved to Wisconsin without registering as a sex offender, the government indicted him for failing to comply with the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901, *et seq.,* in violation of 18

U.S.C. § 2250(a). The district court dismissed the indictment, finding § 20911(5)(A)(ii), applied through § 20911(7)(I), and § 20911(5)(C) of SORNA were categorically misaligned with Thayer's Minnesota statute of conviction. The government appeals, arguing the district court erred in analyzing these provisions of SORNA under the categorical method. We agree with the government and vacate and remand the judgment of the district court.

**I.**

**A.**

Before delving into the factual and procedural background, we review a few relevant legal principles.

SORNA establishes a comprehensive national system of registration for sex offenders, the purpose of which is to "protect the public from sex offenders and offenders against children." *Id*. § 20901. SORNA defines a "sex offender" as "an individual who was convicted of a sex offense." *Id*. § 20911(1). "Sex offense" in turn encompasses both "a criminal offense that has an element involving a sexual act or sexual contact with another" and "a criminal offense that is a specified offense against a minor." *Id*. § 20911(5)(A)(i)–(ii). As relevant to the latter definition of "sex offense," a "specified offense against a minor" includes "an offense against a minor that involves … [a]ny conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(I). Certain categories of consensual sexual conduct are exempted from the definition of "sex offense," specifically "if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older

than the victim." *Id*. § 20911(5)(C). The clause of § 20911(5)(C) relating to consensual sex between minors is colloquially referred to as the "Romeo and Juliet" exception. SORNA obligates sex offenders to register as such in each state in which they reside, work, or are a student. *Id*. § 20913(a).

Although itself a civil regulatory scheme, noncompliance with SORNA is a crime under 18 U.S.C. § 2250. Criminal liability under § 2250 turns upon whether a prior conviction constitutes a "sex offense" within the meaning of SORNA. Answering this question requires courts to examine the underlying conviction and determine whether it satisfies SORNA's statutory definition. The Supreme Court has identified three analytical frameworks to guide the lower courts, and to limit the universe of materials upon which they may rely, in making this determination.

The first and the second—the formal categorical approach and the modified categorical approach—require courts to ignore the defendant's actual conduct and "look solely to whether the elements of the crime of conviction match the elements of the federal [ ] statute." *Gamboa v. Daniels*, 26 F.4th 410, 415 (7th Cir. 2022) (internal quotations omitted); *see also Shular v. United States*, 140 S. Ct. 779, 783 (2020). Only where "the elements of the state law mirror or are narrower than the federal statute can the prior conviction qualify as a predicate … offense." *Gamboa*, 26 F.4th at 415 (internal quotations omitted).

By contrast, the third method, the circumstance-specific approach, focuses on the facts—not the elements—of a prior conviction. Courts applying the circumstance-specific approach "look[] to 'the specific way in which an offender committed the crime on a specific occasion' to determine whether

the prior conviction qualifies as a predicate offense under the federal statute at issue." *United States v. Elder*, 900 F.3d 491, 498 (7th Cir. 2018) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009)).

**B.**

Now to the specifics of this appeal. In a November 2003 criminal complaint, minor J.B. accused her father, appellant Thomas Thayer, of molesting her when she was 14 years old. According to J.B., she and Thayer fell asleep after a Christmas party in 2001. J.B. awoke to find her bra unhooked, her pants and underwear pulled aside, and Thayer touching her vagina. Upon noticing J.B. waking up, Thayer rolled over and went to sleep. During a subsequent law enforcement interview, Thayer admitted he was drunk on the night in question, "[found] himself in a bad position" with his daughter, and must have mistaken J.B. for his wife. Thayer ultimately pled guilty to fourth-degree criminal sexual conduct under Minnesota law. Minn. Stat. § 609.345(1)(b). Thayer was sentenced to 33 months' imprisonment (stayed for 10 years) and 10 years' probation and was required by Minnesota law to register as a sex offender for 10 years. Minn. Stat. §§ 243.166(1)(a)(i)(iii), 243.166(6)(a).

Thayer moved to Wisconsin sometime between August 2017 and February 2020. Thayer did not register as a sex offender in Wisconsin. On July 9, 2020, the government indicted Thayer for failing to register as a sex offender as required by SORNA. Thayer moved to dismiss the indictment, arguing his Minnesota conviction did not qualify as a "sex offense" triggering an obligation to register. Applying a categorical analysis to the definition of "sex offense" under 34 U.S.C. § 20911(5)(A)(i) and to the Romeo and Juliet exception housed

in 34 U.S.C. § 20911(5)(C), Thayer identified a mismatch between SORNA and the Minnesota statute underlying his conviction.

In a January 4, 2021 report, the magistrate judge recommended granting Thayer's motion to dismiss the indictment. Apparently looking to § 20911(5)(A)(i), the magistrate judge applied a categorical analysis and determined there was a mismatch between the Minnesota statute and SORNA's definition of "sexual contact." While the magistrate judge also identified an "elemental distinction" between the Minnesota statue and SORNA's Romeo and Juliet exception, he questioned whether that distinction satisfied the realistic probability of application threshold. The government objected to the magistrate judge's recommendation, reiterating its views that (1) the court should look to § 20911(5)(A)(ii) to define sex offense and that (2) § 20911(5)(C) and §§ 20911(5)(A)(ii) and (7)(I) should be analyzed under a circumstance-specific method.

The district court overruled the government's objections and, while it disagreed with the magistrate judge's analysis, accepted the report's ultimate conclusion. The district court held § 20911(5)(A)(ii), operating through § 20911(7)(I), provided the relevant definition of "sex offense" under SORNA—not, as Thayer suggested, § 20911(5)(A)(i). Nonetheless, the district court agreed § 20911(5)(A)(ii), applied through § 20911(7)(I), and the § 20911(5)(C) Romeo and Juliet exception called for a categorical approach and were misaligned with the Minnesota statute of conviction. The district court dismissed the indictment against Thayer on June 29, 2021.

## II.

The government raises two narrow issues on appeal. First, the government contends the district court erred in analyzing § 20911(5)(A)(ii), as applied through § 20911(7)(I), under a categorical method. Second, the government claims the district court's application of a categorical approach to the Romeo and Juliet exception in § 20911(5)(C) runs afoul of *United States v. Rogers*, 804 F.3d 1233 (7th Cir. 2015), which requires a circumstance-specific approach.

Determining whether a federal statute calls for a categorical or circumstance-specific approach is a question of statutory interpretation. *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019). We review a district court's interpretation of a federal statute de novo. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

As with any issue of statutory interpretation, we begin with the text, attending also to the structure of the statute as a whole and any relevant legislative history. *Nijhawan*, 557 U.S. at 36–40; *see also Taylor v. United States*, 495 U.S. 575, 600–01 (1990). Next, we consider any potential constitutional implications arising from applying a circumstance-specific analysis. *Descamps v. United States*, 570 U.S. 254, 267 (2013). Finally, we examine the "practical difficulties and potential unfairness" of the circumstance-specific approach. *Taylor*, 495 U.S. at 601–02.

### A.

#### 1.

For the purposes of SORNA, a "sex offender" is "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). "Sex offense" is a defined term meaning:

(i) a criminal offense that has an element involving a sexual act or sexual contact with another; [or]

(ii) a criminal offense that is a *specified offense against a minor*[.]

*Id.* § 20911(5)(A) (emphasis added). A "specified offense against a minor" is itself defined to mean:

[A]n offense against a minor that involves any of the following:

(A) An offense (unless committed by a parent or guardian) involving kidnapping.

(B) An offense (unless committed by a parent or guardian) involving false imprisonment.

(C) Solicitation to engage in sexual conduct.

(D) Use in a sexual performance.

(E) Solicitation to practice prostitution.

(F) Video voyeurism as described in section 1801 of Title 18.

(G) Possession, production, or distribution of child pornography.

(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.

*(I) Any conduct that by its nature is a sex offense against a minor.*

*Id.* § 20911(7) (emphasis added).

This appeal requires us to evaluate whether the definition of "sex offense" in § 20911(5)(A)(ii), as applied through § 20911(7)(I)—not §20911(5)(A)(ii) broadly—is analyzed

under a categorical approach or the circumstance-specific approach. This is an issue of first impression in this circuit. Every other court of appeals to consider this question—the Fourth, Eighth, Ninth, and Eleventh Circuits—has concluded the circumstance-specific approach applies. *United States v. Dailey*, 941 F.3d 1183 (9th Cir. 2019); *United States v. Hill*, 820 F.3d 1003 (8th Cir. 2016); *United States v. Price*, 777 F.3d 700 (4th Cir. 2015); *United States v. Dodge*, 597 F.3d 1347 (11th Cir. 2010). We join our sister circuits and hold that § 20911(5)(A)(ii), as applied through § 20911(7)(I), demands a circumstance-specific analysis.

The text of SORNA, with its layered, cascading definitions, is not a model of clarity. The word "offense" on its own may refer either to "a generic crime" or to "the specific acts in which an offender engaged on a specific occasion." *Davis*, 139 S. Ct. at 2328 (quoting *Nijhawan*, 557 U.S. at 33–34). The meaning of "offense" depends upon its context within the surrounding statutory language. *See id*. The text of §§ 20911(5)(A)(ii) and (7)(I) makes clear "offense" refers to the "specific acts in which an offender engaged on a specific occasion." *Id*. As noted, § 20911(7)(I) provides that a "specified offense against a minor" means an "offense" against a minor that involves "[a]ny conduct that by its nature is a sex offense against a minor." Thus, whether a given "offense" constitutes a "sex offense" under §§ 20911(5)(A)(ii) and (7)(I) turns upon the "nature" of the "conduct" that "offense" "involve[d]." 34 U.S.C. § 20911(7)(I). Explicit focus on the "conduct" underlying the prior offense, as opposed to the elements of that offense, refers to the specific circumstances of how a crime was committed, not to a generic offense. *See Nijhawan*, 557 U.S. at 37–39; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1218 (2018). The term "by its nature"—which typically denotes

something's "normal and characteristic quality" or "basic or inherent features"—reinforces this conclusion. *Davis*, 139 S. Ct. at 2329 (internal quotations omitted).

Section 20911(7)(I) directs courts to evaluate the nature of an individual's conduct, not the nature of an offense or of a conviction. This grammatical structure distinguishes § 20911(7)(I) from 18 U.S.C. § 16(b), the statute at issue in *Leocal v. Ashcroft*, 543 U.S. 1 (2004) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and from 18 U.S.C. § 924(c)(3)(B), the statute at issue in *United States v. Davis*, 139 S. Ct. 2319 (2019). *See Davis*, 139 S. Ct. at 2329 (describing "the language of § 924(c)(3)(B) [a]s almost identical to the language of § 16(b)"). Section 16(b) defines a "crime of violence" as, in relevant part, an "offense that … by its nature[] involves a substantial risk" of the application of physical force. 18 U.S.C. § 16(b). The Supreme Court held a categorical analysis applied, observing the term "by its nature" modified "offense" and concluding the provision "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to the petitioner's crime." *Leocal*, 543 U.S. at 7; *see also Davis*, 139 S. Ct. at 2329; *Dimaya*, 138 S. Ct. at 1217. While SORNA's highest-level definition of "sex offender" in § 20911(1) refers to a conviction—a term typically signifying a "crime as generally committed" and a categorical analysis— it is furthest in terms of proximity from the language of the specific sections at issue. *Dimaya*, 138 S. Ct. at 1217 (cleaned up); *see also, e.g., Taylor*, 495 U.S. at 600–01. Whatever trivial ambiguity created by the use of "convicted" in § 20911(1) is consistently resolved in favor of a circumstance-specific analysis by the plain text of §§ 20911(5)(A)(ii) and (7)(I). *Dailey*, 941 F.3d at 1193.

The juxtaposition of § 20911(5)(A)(i) and § 20911(5)(A)(ii) strengthens this conclusion. Section 20911(5)(A)(i) defines sex offense as "a criminal offense that has an *element* involving a sexual act or sexual contact with another." 34 U.S.C. § 20911(5)(A)(i) (emphasis added). It refers explicitly to the "elements" of a crime in its definition of a sex offense, pointing conclusively to a categorical analysis. *United States v. Taylor*, No. 20-1459, slip op. at 4 (U.S. Jun. 21, 2022); *Rogers*, 804 F.3d at 1237. Section 20911(5)(A)(ii), in contrast, does not mention the elements of a crime. Instead, it defines a sex offense as "a criminal offense that is a specified offense against a minor." 34 U.S.C. § 20911(5)(A)(ii). Congress was clearly capable of tethering the definition of "sex offense" to the elements of a crime but elected not to do so in § 20911(5)(A)(ii). "We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005).

SORNA's legislative history and purpose support a circumstance-specific approach to §§ 20911(5)(A)(ii) and (7)(I). SORNA's predecessor, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071 *et seq*. (1994 ed.) (the "Wetterling Act"), conditioned federal funding to the states upon adoption of sex offender registration laws.[1] *Id*. § 14071(g)(2); *Gundy v. United*

---

[1] Thayer points to structural and linguistic similarities between the Wetterling Act's definition of "criminal offense against a victim who is a minor" and SORNA's definition of "specified offense against a minor" to suggest both refer to categories of criminal offenses, meaning

*States*, 139 S. Ct. 2116, 2121 (2019). Congress quickly realized the Wetterling Act did not achieve the desired effect and passed SORNA as a "comprehensive bill to address the growing epidemic of sexual violence against children" to "address loopholes and deficiencies" created by the resultant patchwork of inconsistent and varied state registration laws. H.R. Rep. No. 109-218 at 22 (2005). Of particular concern to Congress were "missing" or "lost" sex offenders who evaded registration requirements. *Gundy*, 139 S. Ct. at 2121. Congress

---

§§ 20911(5)(A)(ii) and (7)(I) must be analyzed categorically. *Compare* 34 U.S.C. § 20911(7), *with* 42 U.S.C. § 14071(a)(3)(A). The dissent, too, points to § 14071(a)(3)(A)'s broad characterization of "criminal offense against a victim who is a minor" as "any criminal offense in a range of offenses specified by State law which is comparable to or exceeds" the subsequent enumerated offenses as evidence the Wetterling Act demanded a categorical analysis and §§ 20911(5)(A)(ii) and (7)(I) require the same treatment. Thayer and the dissent disregard the Wetterling Act's and SORNA's distinct structure and functions. Unlike SORNA, the Wetterling Act did not itself form the basis of independent criminal liability. Instead, the Wetterling Act merely established minimum conditions state registration laws had to meet to receive federal funding. *Gundy*, 139 S. Ct. at 2121. There was no reason to analyze, categorically or otherwise, whether a prior conviction constituted a "criminal offense against a victim who is a minor," so the statutory language upon which the dissent relies does not bear the desired weight. It is entirely unsurprising, then, that Thayer fails to point to any precedent suggesting § 14071(a)(3)(A) itself was analyzed categorically. It is true that, as a general matter, "when statutory language ''is obviously transplanted from … other legislation,'' we have reason to think ''it brings the old soil with it.''" *Davis*, 139 S. Ct. at 2331 (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013)). When drafting § 20911(7), however, Congress expressly omitted the portion of § 14071(a)(3)(A) cited by the dissent. Even if we are to understand § 14071(a)(3)(A) amounted to a legislative preference for a categorical analysis of the Wetterling Act (and we are not convinced), Congress elected to leave this "soil" in the past when drafting § 20911(7).

intended, then, to fashion a wide net ensnaring as many child sex offenders as possible. *See id*. Accordingly, the declared purpose of SORNA is to "protect the public from … offenders against children." 34 U.S.C. § 20901. Sections 20911(5) and 20911(7) are framed as expansions of the definitions of "sex offense" and "specified offense against a minor," respectively. 34 U.S.C. §§ 20911(5), (7). The legislative record suggests Congress intended §§ 20911(5)(A)(ii) and (7)(I) to apply to a broad range of conduct by child predators.

Thayer directs our attention to the Department of Justice's regulations implementing SORNA, which favor a categorical approach to §§ 20911(5)(A)(ii) and (7)(I). *See* Office of the Attorney General, National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,052 (Jul. 2, 2008) [the SMART Guidelines]. *Chevron* deference to agency interpretations of federal statutes is warranted only where the tools of statutory construction fail to reveal a clear meaning, and Thayer concedes that is not the case here. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). Consequently, we decline to accord the SMART Guidelines interpretive weight. Whatever the preference of the Department of Justice, the text of §§ 20911(5)(A)(ii) and (7)(I) controls: a circumstance-specific analysis applies. *See, e.g., Dailey*, 941 F.3d at 1190–93; *Hill*, 820 F.3d at 1006; *Price*, 777 F.3d at 709 n.9.

Applying a circumstance-specific analysis to §§ 20911(5)(A)(ii) and (7)(I) does not implicate the same practical and Sixth Amendment concerns present in other contexts. Where a defendant's punishment may be increased based on facts not found by a jury, such as when dealing with sentencing enhancements or mandatory minimums, the Sixth

Amendment often compels a categorical approach. *See Davis*, 139 S. Ct. at 2327; *Descamps*, 570 U.S. at 269–70. Even applying the circumstance-specific approach, the government bears the burden of proving beyond a reasonable doubt the defendant was previously convicted of a sex offense under SORNA, an essential element of § 2250(a). If Thayer elects to go to trial, he is entitled to put the government to its burden before a jury. Should Thayer decide to plead guilty, he will concede the elements of § 2250(a) and waive his Sixth Amendment right to a jury determination of same. *Descamps*, 570 U.S. at 269–70.

Thayer points to various practical difficulties under the circumstance-specific approach in determining whether the factual circumstances underlying his Minnesota conviction constitute a sex offense. Again, the government bears the burden of proving, beyond a reasonable doubt, Thayer is a sex offender. Any practical difficulties in meeting this threshold, evidentiary or otherwise, favor Thayer. *See Nijhawan*, 557 U.S. at 42 ("[S]ince the Government must show the amount of loss by clear and convincing evidence, uncertainties created by the passage of time are likely to count in the alien's favor."). The dissent is concerned about the possibility of a defendant admitting to underlying conduct when pleading guilty to a state crime being held to his affirmation under oath in a subsequent SORNA proceeding. Of course, pleading guilty and avoiding the uncertainty of a trial generally presents benefits to both defendants and the government. The chance a defendant may later regret his decision to avail himself of these advantages or realize he misjudged the consequences does not alter our assessment of whether a categorical or circumstance-specific analysis applies to these provisions of SORNA.

Like the Fourth, Eighth, Ninth, and Eleventh Circuits, we conclude § 20911(5)(A)(ii), as applied through § 20911(7)(I), must be analyzed under the circumstance-specific method.

**2.**

The foregoing analysis is fully consistent with the Supreme Court's precedent in *Taylor v. United States*, 495 U.S. 575 (1990) (and its progeny, *Johnson v. United States*, 576 U.S. 591 (2015)[2]) and our precedent in *United States v. Walker*, 931 F.3d 576 (7th Cir. 2019). In *Taylor*, the Supreme Court analyzed § 924(e)(2)(B)(ii) of the Armed Career Criminal Act ("ACCA"), which provides for sentencing enhancements for those with "three previous convictions … for a violent felony." 18 U.S.C. § 924(e)(1). ACCA defines the term "violent felony" to mean "any crime punishable by imprisonment for a term exceeding one year … that" "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). This provision of ACCA shares rough parallels with the provisions of SORNA at issue here: § 20901(1) and § 924(e)(1) both refer to convictions and § 20911(7) and § 924(e)(2)(B)(ii) both deal with crimes or offenses that involve specific conduct. Despite the superficial similarity between §§ 20911(5)(A)(ii) and (7)(I) and § 924(e)(2)(B)(ii), however, *Taylor*'s application of a

---

[2] *Johnson* briefly summarizes and reiterates the Supreme Court's holding and reasoning in *Taylor*. 576 U.S. at 596, 604–05. Ultimately, *Johnson* examines whether § 924(e)(2)(B)(ii)'s residual clause is unconstitutionally vague, holding it is. *Id*. at 597–606. For our purposes, *Johnson* presents little additional analytical value. *Taylor* provides the relevant precedent for interpreting § 924(e)(2)(B)(ii).

categorical analysis to the latter does not mandate similar treatment for the former.

First, unlike § 20911(7)(I), § 924(e)(2)(B)(ii) includes a list of generic crimes, such as burglary, arson, and extortion. The Supreme Court determined these generic crimes demanded generic treatment. *Taylor*, 495 U.S. at 589–90, 600–01. By contrast, while other portions of § 20911(7) refer to generic crimes—such as solicitation in § 20911(7)(E) or voyeurism under 18 U.S.C. § 1801 in § 20911(7)(F)—§ 20911(7)(I) addresses specific conduct alone. While the dissent considers this structural distinction (which it omits from its chart comparing the two statutes) insignificant and urges us to disregard it and treat the two statutes similarly, we are limited to considering the statute as drafted by Congress. Unlike § 924(e)(2)(B)(ii), when drafting § 20911(7), Congress separated generic crimes and specific conduct into isolated subsections, and we must interpret § 20911(7)(I) accordingly. Second, ACCA's legislative history unequivocally demonstrates "the enhancement provision has always embodied a categorical approach to the designation of predicate offenses." *Id*. at 588–89, 601. As previously discussed, SORNA's legislative history points decisively in the opposite direction. Third, applying a circumstance-specific analysis to a sentencing enhancement raises practical difficulties and Sixth Amendment concerns that are not at issue when dealing with SORNA. *Id*. at 601–02; *see also Johnson*, 576 U.S. at 605.

In *Walker*, we concluded the Tier II and Tier III provisions in §§ 20911(3)–(4) of SORNA—which determine how long a sex offender must register—require a hybrid categorical and circumstance-specific analysis. 931 F.3d at 580. Tier classifications differ from the definition of "sex offender" in several

crucial respects that render *Walker* inapplicable in this case. Unlike §§ 20911(5)(A)(ii) and (7)(I), SORNA's tiering provisions instruct the court to compare a predicate offense to enumerated federal crimes. 34 U.S.C. §§ 20911(3)–(4). This compels a categorical approach. *Walker*, 931 F.3d at 579–80. Moreover, we did not conclude a hybrid approach applies throughout SORNA or preclude an entirely circumstance-specific inquiry in a different section of the statute. Sections 20911(5)(A)(ii) and 20911(7)(I) are wholly distinct from §§ 20911(3)–(4). Finally, the tiering provisions come into play only after a jury finds beyond a reasonable doubt a defendant committed a sex offense or after a defendant admits as much in a guilty plea. Thayer therefore overreads *Walker*.

**B.**

SORNA's Romeo and Juliet exception excludes from the definition of "sex offense" consensual sex where "the victim was at least 13 years old and the offender was not more than 4 years older than the victim." 34 U.S.C. § 20911(5)(C). The Minnesota statute under which Thayer was convicted criminalizes sexual conduct both where (1) "the complainant is at least 13 but less than 16 years of age and the actor is more than 48 months older than the complainant" and where (2) "the actor is … in a current or recent position of authority over the complainant." Minn. Stat. § 609.345(1)(b). Applying a categorical analysis to SORNA's Romeo and Juliet exception, the district court held that, because Minnesota criminalizes sex where one actor is in a position of authority over the other irrespective of the age differential between the two, the Romeo and Juliet exception and the Minnesota statute are categorically misaligned.

The district court's analysis runs headlong into our precedent in *Rogers*, which held § 20911(5)(C) requires a circumstance-specific approach. 804 F.3d at 1237. Indeed, in a subsequent, unrelated case over which he presided, the district judge appears to have realized his error. *See Harder v. United States*, No. 21-cv-188-jdp, 2021 WL 3418958, at *6 & n.2 (W.D. Wis. Aug. 5, 2021) (noting "the SORNA carve-out for a close-in-age defendant does not call for categorical analysis" which "is a point that I missed in my decision in *Thayer*"). On appeal, Thayer asks us to overrule *Rogers* and find § 20911(5)(C) calls for a categorical analysis. We decline Thayer's invitation, both because the holding in *Rogers* is correct and because doing so would compound the error by creating a direct circuit split with the Fifth Circuit. *See United States v. Gonzalez-Medina*, 757 F.3d 425 (5th Cir. 2014).

Section 20911(5)(C) delineates the Romeo and Juliet exception based on "offense[s] involving … conduct." 34 U.S.C. § 20911(5)(C). As noted above, depending on the context of the statute and the surrounding language, "offense" may refer either to "a generic crime" or to "the specific acts in which an offender engaged on a specific occasion." *Davis*, 139 S. Ct. at 2328 (quoting *Nijhawan*, 557 U.S. at 33–34). The Romeo and Juliet exception's focus on conduct, as opposed to elements, indicates "offense" refers to specific acts instead of to a generic crime. *See Dimaya*, 138 S. Ct. at 1218; *Nijhawan*, 557 U.S. at 37–39; *see also Rogers*, 804 F.3d at 1237. The subsequent string of granular, fact-based qualifiers reinforces this conclusion. Section 20911(5)(C) applies only "'*if* the victim was an adult,' '*unless* the adult *was under* the custodial authority of the offender *at the time* of the offense,' '*if the victim* was at least 13 years old and *the offender was not* more than 4 years older than the victim.'" *Rogers*, 804 F.3d at 1237 (quoting

§ 20911(5)(C)) (emphasis in original). These modifiers refer to the specific, individualized facts and circumstances of an offense, not the general elements. In *United States v. Gonzalez-Medina*, which predates *Rogers*, the Fifth Circuit reached the same conclusion based on much the same reasoning. 757 F.3d at 428–32.

Thayer suggests subsequent Supreme Court decisions in *Mathis v. United States*, 579 U.S. 500 (2016), *Dimaya*, and *Shular v. United States*, 140 S. Ct. 779 (2020) compel the opposite result. These cases offer little relevant guidance on determining whether § 20911(5)(C) requires a circumstance-specific approach at the outset and alter neither our analysis nor our ultimate conclusion. Both *Mathis* and *Shular* deal with provisions of ACCA already established to operate under a categorical framework and analyze, instead, which of the two potential categorical methods (formal or modified) applies. *Shular*, 140 S. Ct. at 783–84; *Mathis*, 579 U.S. at 506–07. The text of the ACCA provisions at issue in *Mathis* and *Shular*—§ 924(e)(2)(B)(ii) and § 924(e)(2)(A)(ii), respectively—differ materially from § 20911(5)(C). Neither includes a list of factual qualifiers to the degree of specificity and nuance seen in § 20911(5)(C). Indeed, § 924(e)(2)(B)(ii)—thoroughly analyzed in *Taylor* and discussed above—enumerates a series of generic offenses. Similarly, *Dimaya* analyzes the definition of "crime of violence" in § 16(b), which focuses on the nature of the offense. *Dimaya*, 138 S. Ct. at 1217; *see also Leocal*, 543 U.S. at 7. Section 20911(5)(C), on the other hand, places conduct at the forefront of the analysis.

We affirm our prior holding in *Rogers*; the text of § 20911(5)(C) compels a circumstance-specific analysis.

## III.

For the foregoing reasons, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

JACKSON-AKIWUMI, *Circuit Judge,* dissenting. The issue presented in this case is a close one; both sides have good arguments. The majority opinion thoroughly lays out the best reasons for adopting the government's position. Ultimately, however, I disagree with my colleagues' conclusion that 34 U.S.C. § 20911(7)(I) calls for a circumstance-specific approach. As I see it, only when read in isolation does subsection (7)(I)'s reference to "conduct" suggest that courts should look at the underlying facts of a prior conviction. When viewed in context with the rest of the statute, the Sex Offender Registration and Notification Act's definition for "specified offense against a minor" closely mirrors other statutes that the Supreme Court has held require a categorical approach. And although I recognize that my reading of the statute would create a circuit split, I disagree with the opinions of our sister circuits for the same reasons that I disagree with the majority opinion.

In particular, I see stronger parallels than the majority opinion does between § 20911(7)(I) and the residual clause of the Armed Career Criminal Act's definition for "violent felony." *See* 18 U.S.C. § 924(e)(2)(B)(ii); *Johnson v. United States*, 576 U.S. 591, 604 (2015) (holding that residual clause is categorical). Both provisions are part of cascading statutory definitions. Both statutes start with a reference to the defendant's prior convictions, before laying out different definitions for the qualifying convictions. And in defining the relevant offenses, both § 20911(7)(I) and § 924(e)(2)(B)(ii) refer to the offender's "conduct." Indeed, the relevant sections of each statute are strikingly similar:

|  | **34 U.SC. § 20911** | **18 U.S.C. § 924(e)** |
|---|---|---|
| **Reference to prior convictions** | "The term 'sex offender' means an individual who was *convicted* of a sex offense." 34 U.S.C. § 20911(1) (emphasis added). | Mandatory minimum applies to any offender who "has three previous *convictions* . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1) (emphasis added). |
| **Relevant subsection defining those prior convictions** | Sex offense includes "an offense against a minor that involves . . . [a]ny *conduct* that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(5)(A)(ii) and (7)(I) (emphasis added). | "[T]he term 'violent felony' means any [felony] crime . . . that . . . involves *conduct* that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). |

Beyond the provisions at issue here and in *Johnson*, the statutes have additional similarities. Just as a categorical interpretation of § 924(e)(2)(B)(ii) is consistent with the categorical approach used elsewhere in the ACCA, *see Taylor v. United States*, 495 U.S. 575, 600–01 (1990), a categorical interpretation of § 20911(7)(I) is consistent with the categorical approach used by other parts of SORNA. We have said that the definition of "sex offense" used in § 20911(5)(A)(i) is categorical, *United States v. Rogers*, 804 F.3d 1233, 1237 (7th Cir. 2015),

as are the definitions for "Tier II" and "Tier III" sex offender used in § 20911(3) and (4), *United States v. Walker*, 931 F.3d 576, 581 (7th Cir. 2019) (adopting hybrid approach that starts with categorical method). Sections 20911(5)(A)(iii) and (iv) likewise use a categorical approach because they instruct courts to compare a predicate offense to enumerated federal and military crimes. The only outlier is § 20911(5)(C)'s "Romeo and Juliet" provision, which I agree with the majority opinion refers to underlying conduct. But that provision refers to an *exception* that applies only after a court has already concluded that a prior conviction qualifies as a sex offense. *See Rogers*, 804 F.3d at 1237. It would be odd for Congress to require the categorical approach for all definitions of "sex offense" found in § 20911 except for "specified offense against a minor" under § 20911(5)(A)(ii). *See United States v. Davis*, 139 S. Ct. 2319, 2328 (2019) (assuming that the word "offense" in § 924(c)(3) carries the same meaning throughout that subsection).

Other textual markers that the majority opinion insists are evidence of a circumstance-specific approach for § 20911(7)(I) are also present in § 924(e)(2)(B). The majority opinion emphasizes that a different subsection of SORNA, § 20911(5)(A)(i), explicitly defines "sex offenses" to include offenses with an "element" involving a sexual act. Thus, my colleagues believe, Congress's exclusion of similar language in § 20911(5)(A)(ii) and (7)(I) should be seen as a conscious decision to eschew the categorical method. But the same argument could be made about § 924(e)(2)(B)(ii). *Compare* 18 U.S.C. § 924(e)(2)(B)(i) (defining violent felony to include offenses with an "element" of force) *with id.* § 924(e)(2)(B)(ii) (lacking any reference to "elements"). Yet the Supreme Court still concluded that the latter provision required a categorical

approach, despite the absence of elemental language Congress put elsewhere in the statute. *Johnson*, 576 U.S. at 604; *Taylor*, 495 U.S. at 600.

The majority opinion also notes that, unlike § 20911(7)(I), section 924(e)(2)(B)(ii) includes several generic crimes that require a categorical approach. (In full, the statute defines violent felony to include any conviction that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.") But again, no meaningful distinction between the two statutes exists. Subsection (7)(I) is only one clause of § 20911(7), which like § 924(e)(2)(B)(ii) enumerates several generic offenses like solicitation and voyeurism. The only difference is that Congress chose to enumerate the offenses in § 20911(7) with the letters (A) through (I) instead of separating them with commas. I do not see this difference as significant, mainly because the Supreme Court already rejected the explanation that § 924(e)(2)(B)(ii) requires a categorical approach only because of the presence of generic offenses. *Johnson*, 576 U.S. at 604.

Although *Johnson* was primarily about whether the residual clause was unconstitutionally vague, Justice Alito's dissent urged the Court to save the provision by jettisoning the categorical method and adopting a circumstance-specific approach. In response, the Court carefully explained why the residual clause required a categorical approach apart from the clause's proximity to the enumerated generic offenses:

> *Taylor* had good reasons to adopt the categorical approach, reasons that apply no less to the residual clause than to the enumerated crimes. *Taylor* explained that the relevant part of the

> Armed Career Criminal Act "refers to 'a person who … has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses." 495 U.S., at 600. This emphasis on convictions indicates that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Ibid*. *Taylor* also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction. For example, if the original conviction rested on a guilty plea, no record of the underlying facts may be available. "[T]he only plausible interpretation" of the law, therefore, requires use of the categorical approach. *Id.*, at 602.

*Id.* at 604.

My colleagues believe that on the topic of the categorical method, *Johnson* provides little analytical value beyond what the Court already said in *Taylor*. But I do not read the passage quoted above as superfluous. The Court's rejection of the circumstance-specific approach was necessary to its holding because it had to explain why it refused to abandon the categorical method even when doing so would have allowed the Court to avoid an unconstitutional interpretation. *See id.* at 631–32 (Alito, J., dissenting) (collecting authorities describing canon of constitutional avoidance); *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (defining dictum as statements that are "unnecessary to the decision" or "could have

been deleted without seriously impairing the analytical foundations of the holding"). Because *Johnson* holds that the residual clause requires a categorical approach, we should assume that the Supreme Court would say the same about the text in § 20911(7)(I).

In addition to the text of the statute, the majority opinion reasons that a circumstance-specific approach is supported by (1) SORNA's legislative history and (2) the lack of practical and Sixth Amendment concerns present in other contexts. I disagree with the majority opinion's analysis on both grounds.

First, the legislative history is, at best, ambiguous. True, Congress intended SORNA to cast a "wide net." Ante at 11. But even the most expansive interpretation of a statute must have clear delineations; a criminal law that "fails to give ordinary people fair notice of the conduct it punishes" is "standardless." *Johnson*, 576 U.S. at 595. And here, Congress lifted § 20911(7)(I) from a list of enumerated offenses that previously existed under the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act. *Compare* 34 U.S.C. § 20911(7)(I) and 42 U.S.C. § 14071(3)(A)(vii) (2002). "[W]hen statutory language is obviously transplanted from other legislation, we have reason to think it brings the old soil with it." *United States v. Davis*, 139 S. Ct. 2319, 2331 (2019) (cleaned up). The old soil in this case is prefatory text that appeared with the list of qualifying offenses in the Wetterling Act, and which specified that a categorical approach applied. *See* 42 U.S.C. § 14071(3)(A) (2002) (explaining that a qualifying offense was "any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of

offenses"). The majority opinion dismisses this part of the legislative history by citing a lack of precedent confirming that the Wetterling Act was analyzed categorically. But as the majority opinion recognizes, litigants lacked cause to test the Wetterling Act's definitions in court because that act did not include a criminal-liability component. Nonetheless, the Wetterling Act was not dead letter; states needed to construe the act's definitions to determine which offenses they must make registrable to receive federal funding. *See* Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 61 Fed. Reg. 15110-02, 15113 (Apr. 4, 1996) (instructing states on how to construe the Wetterling Act). Accordingly, I do not see why a dearth of judicial opinions on the subject should lead us to ignore the Wetterling Act's clear text—an important part of SORNA's legislative history that supports Thayer's position.[1]

Second, a circumstance-specific approach to § 20911(7)(I) is more impractical than the majority opinion suggests. Unless prior victims are forced to come back and testify—perhaps decades after the fact—any evidence the government would rely on to prove the underlying circumstances of a prior conviction could raise evidentiary or constitutional concerns. For example, the Eighth Circuit has adopted a circumstance-specific test for § 20911(7)(I), and in at least one case

---

[1] The majority opinion also points out that when Congress enacted SORNA, it omitted the prefatory text from the Wetterling Act. But the exclusion of this text in SORNA does not change the fact that when Congress drafted the phrase "any conduct that by its nature is a sexual offense against a minor" as a definition in the Wetterling Act, it did so knowing the phrase would be construed categorically. It then copied this categorical definition essentially unchanged into SORNA.

the government satisfied its burden by admitting at trial an old video of the victim's police interview. *United States v. KT Burgee*, 988 F.3d 1054, 1057 (8th Cir. 2021). That strategy worked only because the defendant failed to challenge the video's admissibility. *Id.* at 1060. But upon proper objection, this type of evidence could raise concerns about hearsay and a defendant's right to cross examine witnesses under the Confrontation Clause. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The majority opinion insists that any practical difficulties under a circumstance-specific approach will benefit Thayer because the government has the burden to prove the facts underlying his prior conviction. Other defendants, however, will be unfairly punished under this approach. In many cases, the government is likely to rely on plea agreements to establish the underlying conduct of a conviction. But the facts put in the record at a plea hearing may not accurately reflect the strength of the government's case as to conduct outside the elements of conviction, especially since a defendant "may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations." *Descamps v. United States*, 570 U.S. 254, 270 (2013). And for defendants who negotiated a plea deal, it would "seem unfair" to sandbag them with a duty to register after they thought they had pled down to a conviction that did not carry a registration requirement. *Taylor*, 495 U.S. at 602.

Additional impracticalities stem from how SORNA's "sex offender" definition creates registration requirements as part of a civil regulatory scheme. As amicus points out, a circumstance-specific approach will create confusion about who is required under federal law to register. Will a pre-registration

hearing be necessary to determine whether the state could have proven additional facts not included in the plea? These administrative headaches are not present under a categorical approach because, when the only issue is the existence of a prior conviction, adequate notice and an opportunity to challenge the registration requirement has typically already been provided through the prior criminal prosecution. *See Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003).

Finally, although I agree with the majority opinion that § 20911 does not invoke the same Sixth Amendment concerns as the ACCA, *see Davis*, 139 S. Ct. at 2327, I do not see that as a reason to choose a circumstance-specific approach. Not every statute requiring a categorial approach has a Sixth Amendment component; the Supreme Court has adopted a categorical approach for appropriate statutes even when no constitutional concerns are present. *See, e.g., Moncrieffe v. Holder*, 569 U.S. 184, 200 (2013) (adopting categorical approach to promote "judicial and administrative efficiency" for removal proceedings in which an immigration judge must determine whether a prior conviction is an "aggravated felony"). Indeed, the Court cited practical considerations rather than constitutional concerns when it reaffirmed the categorical approach in *Johnson*, 576 U.S. at 604. After considering the text of § 20911(7)(I), the legislative history, and the other practical difficulties associated with a circumstance-specific approach, I would adopt the categorical method for § 20911(7)(I).

On that basis, I respectfully dissent.